*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* LEWIS-SYKES/PETERSON-SYKES, Minors.

UNPUBLISHED
March 21, 2024

Nos. 365661; 365663
Oakland Circuit Court
Family Division
LC No. 2020-882017-NA

Before: O'BRIEN, P.J., and BORRELLO and HOOD, JJ.

PER CURIAM.

In Docket No. 365661, respondent-mother, P. Sykes, appeals as of right the trial court's order terminating her parental rights to DLS and DPS under MCL 712A.19b(3)(e), (f), (g), and (j). In Docket No. 365663, respondent-father, D. Peterson, appeals as of right the same order, which terminated his parental rights to DPS under the same statutory grounds. Respondents pleaded no contest to these statutory grounds for termination, but argue that the trial court clearly erred by finding that termination of their parental rights was in the children's best interests. Respondent-father also asserts that he was denied the effective assistance of counsel. For the reasons set forth in this opinion, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Co-petitioners, J. Grasl and H. Grasl, helped start a nonprofit to assist children who had aged out of the foster care system. They helped purchase and renovate a home intended to provide semi-independent living for four-boys. H. Grasl was a foster care worker by training and profession. After the home opened in 2013, respondent-father, then 20 years old, was one of the first individuals selected to reside in the home. However, after a few months, respondent-father was asked to leave the home. At that point, in July 2013, petitioners invited respondent-father to move into their family's home. Respondent-father lived in petitioners' home until December 26, 2013, when he moved out. It appears that respondent-father moved into a home with respondent-mother and her three-year-old son DLS.

In March 2014, respondent-mother, then 20 years old, gave birth to respondent-father's daughter, DPS. At this time, respondents' relationship was "on and off." According to petitioners,

immediately after DPS's birth, they supported the new parents and assumed the role of grandparents to the children. When respondent-mother did not have a safe place for the children, the children frequently stayed for weeks at a time with petitioners. In addition to providing care for the children, petitioners responded to calls from respondent-mother indicating a need for food, formula, or diapers.

According to H. Grasl, in March 2015, she and J. Grasl helped respondents find a house and furnish it. Petitioners also transported respondents to the grocery store and appointments. They also took DLS to preschool and would pick up the children to stay with them for long weekends. H. Grasl testified that in 2016 they even helped respondents plan a wedding when they indicated that they had reconciled and wanted to get married.

In February 2017, following an incident of domestic violence between respondents, petitioners took the children into their home. Later that same weekend, events escalated and respondent-mother was arrested and spent the remainder of the weekend in jail. Around this time, H. Grasl was concerned for both respondents and the children. The children reported to H. Grasl that they were afraid in respondents' home, that they were being left alone, that they witnessed fights in the home, and that they observed others staying at the house.

During the months that followed, the children remained in petitioners' care. According to H. Grasl, she and J. Grasl spoke to respondents in April and May 2017 about a limited guardianship. Both respondents agreed to the suggestion and signed paperwork to create the guardianship. In May 2017, J. Grasl and H. Grasl petitioned the probate court to be appointed limited guardians of DLS and DPS. The court denied a limited guardianship, and instead ordered a full guardianship. Consequently, on July 19, 2017, the probate court appointed petitioners as co-guardians of the children. The probate court's court-structured plan that governed the guardianship granted respondents supervised parenting time and required, among other things, that respondents obtain and maintain suitable housing and employment, pay reasonable child support to petitioners, and abstain from alcohol and illegal substances. The probate court apparently amended the court-structured plan in 2018 to require respondents to also submit to weekly random drug screens, participate in mental health evaluations, and attend family therapy. In March 2018, the court suspended respondents' parenting time for failure to comply with its orders. As a consequence, respondents last visited the children in March 2018.

In June 2020, with the probate court's permission, petitioners moved with the children to Tennessee. In July 2020, approximately three years into the guardianship, petitioners filed a petition requesting that the court take jurisdiction over DLS and DPS and terminate respondents' parental rights to their respective children under MCL 712A.19b(3)(e), (f), (g), and (j).[1] The

---

[1] The petition also sought to terminate the parental rights of JL, DLS's father. At the time of the filing of the petition, it had been five years since he had seen his son. JL did not participate in any of the lower court proceedings. In addition to requesting termination of parental rights under MCL 712A.19b(3)(e), (f), (g), and (j), the petition also sought to terminate JL's parental rights under MCL 712A.19b(3)(a)(*ii*) (desertion).

petition alleged that respondents had failed, without good cause, to comply with the probate court's court-structured plan, failed to provide regular and substantial support for their children for a period of two years or more before the filing of the petition, and failed to have regular and substantial contact with the children.

In August 2021, respondents entered no-contest pleas to jurisdiction and to the alleged statutory grounds for termination. Records from the probate court proceedings were used to establish a factual basis for the pleas, including several orders in which the probate court repeatedly found that respondents were completely noncompliant with the court-structured plan.[2]

Following a best-interest hearing, the trial court found that termination of respondents' parental rights was in the children's best interests. These appeals followed.

## II. ANALYSIS

## A. BEST INTERESTS

Both respondents argue that the trial court clearly erred by finding that termination of their parental rights was in the children's best interests.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of the parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering whether termination of parental rights is in a child's best interests, a court may consider a variety of factors. *In re White,* 303 Mich App 701, 713; 846 NW2d 61 (2014). These factors include the bond between the child and the parent, the parent's ability to parent the child, the child's need for permanency and stability, the advantages of a foster home over the parent's home, the parent's compliance with the case service plan, the parent's visitation history with the child, the child's well-being, and the possibility of adoption. *Id.* at 713-714. In addition, the trial court should consider the child's safety and well-being, including the risk of harm a child might face if returned to the parent's care. See *In re VanDalen,* 293 Mich App 120, 142; 809 NW2d 412 (2011). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones,* 286 Mich App 126, 131; 777 NW2d 728 (2009).

"The trial court should weigh all the evidence available to determine the children's best interests." *In re White,* 303 Mich App at 713. The court's focus must be on the child and not the parent. *In re Moss,* 301 Mich App 76, 87; 836 NW2d 182 (2013). When more than one child is involved, a trial court must consider each child's best interests separately, *In re Olive/Metts,* 297 Mich App 35, 42; 823 NW2d 144 (2012), but a court need not make "individual" and "redundant" factual findings" if the children's interests do not significantly differ, *In re White*, 303 Mich App

---

[2] After the court considered respondents' no-contest pleas, an adjudication trial was held regarding father JL. The court found statutory grounds to assume jurisdiction over DLS and found clear and convincing evidence to terminate JL's parental rights under MCL 712A.19b(3)(a)(*ii*), (e), (f), (g), and (j). JL has not appealed that decision and is not a party to this appeal.

at 715-716. Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss,* 301 Mich App at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones,* 286 Mich App at 129.

The trial court did not clearly err when it found that termination of respondents' parental rights was in the children's best interests. The evidence established that DLS was 6½ years old and DPS was 3 years old when petitioners were granted a full guardianship over them in July 2017. Before the guardianship, while in respondents' care, the children were exposed to, among other things, domestic violence, physical neglect, food insecurity, and educational neglect. By the time the court terminated respondents' parental rights in February 2023, the children had been in petitioners' care for more than five years. During that time, respondents failed to comply with the court-structured plan. Respondents did not regularly pay child support and they did not consistently visit their children. With regard to the later transgression, although the court presiding over the guardianship suspended respondents' parenting time, it did so because respondents refused to submit to court-ordered drug screens, failed to attend hearings, and failed to submit to a psychological evaluation and attend therapy.

Respondents argue that they could not financially afford to comply with the court's orders because they lacked the funds to submit to the ordered drug screens. The record does not support these assertions. Respondent-father testified that in 2018, he and respondent-mother were living in a home that they thought they would have an opportunity to buy. They invested $6,000 into home repairs before discovering that the purchase potential was a scam. They then purchased a different home in 2019. Because this home was in disrepair, they invested more than $9,000 into the home to make it livable. Then, between 2019 and 2021, they paid off the $22,000 balance owed on the land contract. Respondent-father further explained that he did not use any of the money that they invested in the homes to pay for drug screening because the ultimate goal was to have a home for the children. According to respondents, this same thought process was why they never sought to reinstate parenting time. Both respondents testified that they did not file a petition to reinstate parenting time during the guardianship matter because they did not want to simply just visit their children. Instead, they wanted to wait until they had secured housing, so they would be in a better position to terminate the guardianship.

From this record the trial court was correct to conclude that respondents reasoning for their actions does not support their claims that they failed to participate in drug screening because they could not afford it. By pursuing the course they took, respondents intentionally missed opportunities to spend time with the children and ensure that the parent-child bond remained intact. Indeed, at the time of termination, it had been almost five years since respondents last saw their children. Further, their failure to maintain contact with their children caused the children significant emotional harm. In particular, DPS developed an attachment disorder that was still being addressed by the children's therapist. Further, she told others that her parents were dead. The therapist explained this was a coping mechanism. Respondents' actions also evidenced an inability to recognize their children's overarching needs and then to act accordingly. Further, they clearly lacked insight into how their actions affected the children's mental and emotional well-being.

By contrast, the children were placed with petitioners, who were attending to all of their needs and giving them the opportunity to flourish. Both children were diagnosed with emotional or mental health disorders. From the outset, petitioners sought out therapists to address the children's emotional and mental health needs. Similarly, petitioners insured that the children regularly attended school. The also provided the children with the opportunity to participate in extracurricular activities, including sports and summer camps.

Petitioners were also addressing the children's special medical needs. DPS exhibited some orthopedic issues related to her back and legs. She had been referred to a pediatric orthopedic surgeon, but respondents failed to follow through with this referral. DLS had significant dental issues related to a lack of care and nutrition as an infant. DLS also suffered from a Vitamin D deficiency, asthma, high blood sugar, high cholesterol, and a history of lead poisoning. Petitioners ensured that he was following a diet that would address several of these concerns.

On this record, it is clear that the home offered by petitioners was preferable to the home that respondents had provided and would be able to provide in the future. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42.

Several witness, including petitioners, the children's former guardian ad litem, and their therapists, all testified that a strong bond existed between petitioners and the children. By contrast, there was testimony that no bond existed between DPS and respondents and that any bond that had existed between DLS and respondent-mother had been damaged by the amount of time that had passed since respondents visited the children. In the event that the trial court terminated respondents' parental rights, petitioners wished to adopt both children and provide them with the permanency and stability they required.

The children's needs for permanency and finality is readily apparent from the record. There was testimony that DPS frequently asked petitioners when they would be her parents. DLS frequently expressed a desire to have petitioners' last name. There was also testimony that the children had clearly and consistently expressed a desire to remain in petitioners' care and they had been equally vocal about never returning to respondents' home.

The therapist and psychologist from the Court Psychological Clinic also provided compelling testimony regarding the children's best interests. The court psychologist testified that the children had gained a sense of stability and safety in their placement with petitioners, which they did not have while in respondents' care, and that this progress had led to a decrease in the children's anxiety and maladaptive coping techniques. The psychologist opined that disrupting the children's current stability would likely create a significant amount of anxiety for both children and disrupt their functioning. Ultimately, the psychologist opined that remaining in petitioners' permanent custody would be in the children's best interests.

Similarly, the therapist who treated the children from 2017 until 2020 testified that a strong bond existed between petitioners and the children, and that the children looked to petitioners to meet their needs. The therapist testified that removing the children from petitioners' home would be extremely detrimental to both children, but especially to DPS, because uprooting the children would be very traumatic.

Considering this record, the trial court did not clearly err when it found that termination of respondents' parental rights was in the children's best interests. At the time of termination, the children were residing with guardians who had provided a safe and stable home where all of their needs were being met and would continue to be met. Further, continuing a parent-child relationship with respondents would have been detrimental to the children's physical, educational, and emotional well-being. The trial court properly weighed appropriate factors when considering all of the children's best interests. Termination of respondents' parental rights was the only avenue by which the children had the possibility of achieving the permanency offered by petitioners. Accordingly, the trial court did not clearly err when it found that termination of respondents' parental rights was in the children's best interests.

As an additional argument, respondent-mother asserts that the trial court's best-interest decision was flawed because it failed to consider continuation of the guardianship as an alternative to termination of their parental rights.

Typically, the appointment of a guardian is done in an effort to avoid termination of parental rights. *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). "[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *Id*. at 707 (citation omitted). But under any circumstance, a trial court may only appoint a guardian if "it is in the child's best interests to appoint a guardian." *Id*. (citations omitted). A guardianship may be appropriate when "an ongoing relationship with [the parent]—rather than termination—is in the children's best interests." *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010).

Here, the children had already been in a guardianship with petitioners for the preceding five years and respondents failed to comply with the court-structured plan, something the trial court obviously knew. The trial court rejected the possibility of continuing the guardianship because it found more compelling the children's needs for stability, permanency, and finality. Moreover, the court psychologist specifically testified that a guardianship would not be in the children's best interests because the children had disclosed a desire for permanence and they would like to know that they were permanently staying with petitioners. From this record, the trial court properly concluded that continuing the guardianship in lieu of terminating respondents' rights was not a viable option.[3]

---

[3] Respondent-mother relies on *In re Affleck/Kutzleb/Simpson*, 505 Mich 858, 935 NW2d 316 (2019), to suggest that the trial court was required to consider guardianship. In that case, our Supreme Court vacated this Court's decision and remanded to the trial court in lieu of granting leave "for reconsideration of whether terminating respondent's parental rights is in the best interests of each child." *Id*. The Court noted: "Petitioner did not consider recommending a guardianship for [the minor children] with respondent's mother because of a purported departmental policy against recommending guardianship for children under the age of 10. Absent contrary statutory language, such a generalized policy is inappropriate." *Id*. Thus, it was a

## B. INEFFECTIVE ASSISTANCE OF COUNSEL

As an alternative basis for reversal, respondent-father argues that his counsel was ineffective for advising him to enter a plea to the existence of statutory grounds for termination of his parental rights. Specifically, he argues that the evidence presented during the best-interest hearing failed to support a finding by clear and convincing evidence that statutory grounds for termination existed.

This Court applies criminal law principles to claims of ineffective assistance of counsel in child protective proceedings. *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). The issue of ineffective assistance of counsel is a mixed question of fact and law. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012). Effective assistance of counsel is presumed and a defendant bears a heavy burden to prove otherwise. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). "To establish a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense." *People v Riley*, 468 Mich 135, 140; 659 NW2d 611 (2003), citing *Strickland v Washington,* 466 US 668, 687; 104 S Ct 2052; 80 L Ed 2d 674 (1984); see also *People v Pickens,* 446 Mich 298, 302-303; 521 NW2d 797 (1994). "In order to demonstrate that counsel's performance was deficient, the defendant must show that it fell below an objective standard of reasonableness under prevailing professional norms. In so doing, the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *Riley*, 468 Mich at 140. Establishing prejudice necessarily requires demonstrating a reasonable probability that the result of the proceeding would have been different but for counsel's error. *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). Further, the defendant bears the burden of establishing the factual predicate for his claim. *Putman*, 309 Mich App at 248. Because respondent-father did not move for a new trial or a *Ginther*[4] hearing in the trial court, and because this Court denied his motion to remand, our review of respondent-father's ineffective-assistance claim is limited to mistakes apparent on the record. See *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020); *People v Solloway*, 316 Mich App 174, 188; 891 NW2d 255 (2016).

When termination of parental rights is contested, a petitioner has the burden of establishing at least one of the statutory grounds for termination in MCL 712A.19b(3) by clear and convincing evidence. *In re Trejo,* 462 Mich 341, 355; 612 NW2d 407 (2000). In this case, however, respondent-father pleaded no contest to the existence of statutory grounds for termination under MCL 712A.19b(3)(e), (f), (g), and (j), which permit termination of parental rights under the following circumstances:

> (e) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and the parent has substantially failed, without good cause, to comply with a court-structured plan described in section 5207 or 5209 of the estates and protected individuals code, 1998 PA 386,

---

generalized policy against guardianships that was at issue in *In re Afflec*k, and there is nothing in the record to suggest that any such policy was a factor here.

[4] *People v Ginther,* 390 Mich 436; 212 NW2d 922 (1973).

MCL 700.5207 and 700.5209, regarding the child to the extent that the noncompliance has resulted in a disruption of the parent-child relationship.

(f) The child has a guardian under the estates and protected individuals code, 1998 PA 386, MCL 700.1101 to 700.8206, and both of the following have occurred:

(*i*) The parent, having the ability to support or assist in supporting the minor, has failed or neglected, without good cause, to provide regular and substantial support for the minor for a period of 2 years or more before the filing of the petition or, if a support order has been entered, has failed to substantially comply with the order for a period of 2 years or more before the filing of the petition.

(*ii*) The parent, having the ability to visit, contact, or communicate with the minor, has regularly and substantially failed or neglected, without good cause, to do so for a period of 2 years or more before the filing of the petition.

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent.

Respondent-father's reliance on the evidence at the best-interest hearing to support his argument that there was no factual support for a statutory ground for termination is misplaced. Because respondents pleaded no contest to the existence of statutory grounds for termination, petitioners were relieved of their burden of presenting evidence to establish a statutory ground for termination by clear and convincing evidence. Therefore, even if we were to agree with respondent-father's argument that the evidence at the best-interest hearing failed to support a statutory ground for termination, given that petitioners did not have an obligation to present such evidence after respondents' pleas, the absence of such evidence at the best-interest hearing, standing alone, would not demonstrate that it was objectively unreasonable for counsel to advise respondent-father to enter a no-contest plea to the statutory grounds for termination. However, even though the hearing that followed focused on the children's best interests, there was also an abundance of evidence demonstrating factual support for the existence of the statutory grounds for termination.

Testimony was presented that before the creation of the guardianship, the children, while in respondents' care, were exposed to domestic violence, physical discipline, physical and education neglect, substance abuse, and food insecurity. Then, after the implementation of the guardianship, respondents failed to comply with the court-structured plan, and during the two years preceding the filing of the petition, respondents neglected to financially support their children and

failed to visit, contact, or communicate with the children.  Further, the evidence supported a finding that there was no good cause for respondents' omissions.  These salient facts support termination of respondents' parental rights under MCL 712A.19b(3)(e), (f), (g), and (j).  Given the overwhelming evidence supporting these statutory grounds, we cannot conclude that respondent-father's counsel made an unreasonable strategic decision by advising respondent-father to enter a no-contest plea to the statutory grounds.  It was objectively reasonable for respondent-father's counsel to decide not to contest the statutory grounds and instead focus on the best interests of the children.  Further, counsel's trial strategy limited further development of respondent-father's shortcoming and omissions.  Given the extensive record supporting the plea, there was not a reasonable probability that a challenge to the statutory grounds would have been successful.  Accordingly, respondent-father's claim that he was denied the effective assistance of counsel is without merit.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Stephen L. Borrello
/s/ Noah P. Hood